# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

v.                                                  No. 2:25-CR-00537-MIS-1

LEONEL TORRES,

       Defendant.

## <u>SEALED ORDER</u>

THIS MATTER is before the Court pursuant to its Sealed Order Granting Defendant's Motion to Determine Mental Competency ("Order"), entered on June 17, 2025. ECF No. 33. The Court held a competency hearing on August 21, 2025, and took the matter of Defendant's competency status under advisement. Clerk's Mins. at 1-2, ECF No. 38; Tr. of Proceedings Competency Hr'g at 48:10, ECF No. 39 ("Tr.").

The questions presented to the reviewing physician were whether: (1) Defendant has "a rational as well as factual understanding of the charges against him[;]" (2) Defendant has "sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding[;]" and (3) if Defendant "does not presently have a rational or factual understanding of the charges" against him, or "does not have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," there is "a substantial probability that the defendant will attain either of these capacities in the foreseeable future?" *See* Order at 2.

The Parties stipulated to the expert qualifications of the psychologist, Nick Barneclo, Ph.D. ("Dr. Barneclo"), who conducted the competency evaluation of Defendant, and further stipulated to Dr. Barneclo's answers on the first and second questions. Clerk's Mins. at 1; Tr. at 4:15-5:6. The Court finds there was sufficient evidence to support Dr. Barneclo's conclusions that Defendant

does not have a factual and rational understanding of the criminal charge against him and does not have the ability to confer with his attorney with a reasonable degree of factual and rational understanding. As such, for the reasons set forth below, the Court orders Defendant to the custody of the Attorney General, pursuant to 18 U.S.C. § 4241(d), for a period not to exceed four months to undergo an evaluation as to whether he will be able to attain competency in a reasonable time.

## BACKGROUND

A criminal complaint was brought against Defendant on January 24, 2025, for conspiracy to transport in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I). Compl. at 1, ECF No. 1. Defense counsel was appointed the same day, ECF No. 2, and an interpreter flag was set by the Court for a Spanish interpreter for Defendant. A Pretrial Services Report ("PTR") was entered on January 28, 2025. ECF No. 5. The PTR indicated that Defendant has a mental disability and noted that he "graduated from high school while attending special education classes[,]" and that he was hit on the head with a baseball as a child and "has always had issues" physically and mentally since then. *Id.* at 2-3. On January 31, 2025, United States Magistrate Judge Kevin Sweazea ordered Defendant be detained pending trial. ECF No. 12 at 2-3. Defendant has been in custody since his arrest on January 21, 2025.

Defendant was subsequently charged via Information on March 24, 2025, for one count of transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I). ECF No. 14. Thereafter Defendant consented to plea before Judge Sweazea, waived prosecution by indictment, and entered into a "Fast Track Plea Agreement" with the Government. *See* ECF Nos. 15, 16, and 17. Defendant's Plea Agreement—signed by himself, his defense counsel, and the Government—provided the following admission of fact:

**On or about January 21, 2025, within Luna County in the District of New Mexico and elsewhere, I knowingly and intentionally conspired and agreed**

2

> **with other persons to transport and move within the United States in a Hyundai Sonata, four aliens who I knew were in the United States unlawfully, with the intent to help them remain in the United States illegally. Specifically, I had been in contact with a known alien smuggler with whom I agreed to transport aliens to Albuquerque, New Mexico. I admit that I transported the aliens and that I participated in the conspiracy for private financial gain.**

ECF No. 17 at 5. Defendant pleaded guilty to the Information on March 24, 2025. *See* ECF No. 18. Defendant faces a statutory maximum term of imprisonment of 10 years. 8 U.S.C. § 1324(B)(i); *see* ECF No. 17 at 2; ECF No. 19 at 9.

On May 6, 2025, the Presentence Investigation Report ("PSR"), ECF No. 19, was disclosed to all Parties, ECF No. 29 at 1. The PSR reflected that Defendant "received a head injury at the age of two where he was hit with a baseball[,]" "has been mentally delayed since 2011[,]" and received his high school diploma through special education classes at Los Lunas High School in 2011. PSR at 8-9. Defendant's sentencing was to occur on May 22, 2025 before the Honorable United States District Judge Sarah M. Davenport, but the matter was continued so the case could be reassigned to a different district judge. *See* ECF No. 22. On June 9, 2025, the case was reassigned to the undersigned, ECF No. 27, and Defendant was set to be sentenced on June 26, 2025, ECF No. 28, at which time Defendant would "have spent a total of 157 days or 5 months and 6 days in custody[,]" ECF No. 29 at 1.

 On June 13, 2025, Defendant filed his Unopposed Motion to Determine Mental Competency ("Motion") pursuant to 18 U.S.C. § 4241. ECF No. 31. Defense counsel represented that "with each passing conversation" with Defendant it "bec[a]me clear that Mr. Torres is not fully able to assist counsel with his defense or understand further Court proceedings." Mot. at 1. Defense counsel noted his receipt of "records and information, namely a prior competency

evaluation,[1] as well as information contained in the [PSR] related to Mr. Torres receiving a head injury as a child[,] . . . being mentally delayed since 2011[,] . . . and [] attending special education classes in high school" that support a request to examine Defendant's competency pursuant to 18 U.S.C. § 4241(b). *Id.* at 1-2.

The Court vacated the June 26th sentencing hearing, ECF No. 32, and granted Defendant's Motion, ordering the Clerk of Court to appoint a physician to conduct a competency evaluation of the Defendant and to furnish a report to the Court responding to the following questions:

1. Does the defendant now have a rational as well as factual understanding of the charges against him?

2. Does the defendant now have sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding?

3. If the defendant does not presently have a rational or factual understanding of the charges or presently does not have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, then is there a substantial probability that the defendant will attain either of these capacities in the foreseeable future?

Order at 2. Dr. Barneclo submitted his Bilingual Federal Forensic Psychological Evaluation of Defendant on July 21, 2025 ("Report"). ECF No. 36. The Report indicated the evaluation was conducted via Zoom in Defendant's "dominant language[.]" *Id.* at 2. Dr. Barneclo's Report was admitted as Defendant's Exhibit 1. Tr. at 5:9-25.

At the competency hearing on August 21, 2025, Dr. Barneclo testified that he met with Defendant for "more than three hours" on Zoom. *Id.* at 14:18-20, 15:23, 21:19-21. Dr. Barneclo administered the following tests to assess Defendant's competency: The Mini Mental Status Examination – Second Edition; Georgia Court Competency Test; Revised Competency

---

1    The Court observes this procedural history in part because of its peculiarity in that Defendant was able to (1) waive Indictment, (2) consent to plea before a Magistrate judge, (3) enter into a plea agreement with the Government, and (4) plead guilty to the charge against him. Defendant has now been held in the custody of the Bureau of Prisons for more than the amount of time he would face at sentencing.

Assessment Instrument; The Evaluation of Competency to Stand Trial – Revised (ECST-R); The Millon Clinical Multiaxial Inventory – 4th Edition (MCMI-IV); The Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV Spanish Version); and The Wechsler Adult Intelligence Scale – Fifth Edition (WAIS-5). *Id.* at 9:6-17; Report at 8.

Dr. Barneclo administered both the English and Spanish versions of the Weschler Adult Intelligence Scale assessments to ensure accuracy of the results. Tr. at 9:18-10:6. On questions from the Court and Parties, Dr. Barneclo denied being "fluent" in Spanish but maintained that he was "competent" in the language for purposes of his work and noted that he has evaluated patients for legal competency in both English and Spanish throughout his 22-year career without ever having a need to use a Spanish interpreter. *Id.* at 19:16-20:3, 20:21-25. Dr. Barneclo testified that he has no experience in treating a person to competency and stated that if he was made aware of information regarding Defendant's history of violence and noncompliance with taking medications, such information could have impacted his conclusion on question 3 as to Defendant's treatability. *Id.* at 23:10-12, 27:15-29:1.

At the hearing, a Forensic Mental Health Evaluation report dated April 10, 2017, was admitted unopposed as Government's Exhibit 1. Tr. at 6:6-18. The 2017 report arose out of a competency evaluation when Defendant was facing charges of "alleged Child Abuse (great bodily harm x 2) and Child Abuse (no death or great bodily harm)" in the State of New Mexico. Gov't Ex. No. 1 at 2. The 2017 report indicates the evaluation of Defendant was done using a Spanish-speaking interpreter, notes that Defendant has a history of being non-compliant with medication, and concludes:

> In light of his documented cognitive deficits, Mr. Torres was unable to demonstrate rational or factual knowledge of criminal proceedings and despite numerous explanations, was unable to retain pertinent legal information. Overall, he lacks rational reasoning and decisional capacity necessary to assist his attorney in his

defense. It is therefore, the clinical opinion of this examiner, Mr. Leonel Torres is not competent to stand trial.

*Id.* at 5-6, 11. Dr. Barneclo did not have access to the 2017 report before he evaluated Defendant and rendered his own Report. Tr. at 16:25-17:4.

The Government asserted that the third question asked of Dr. Barneclo was premature under the statutory scheme and requested the Court order Defendant to the commitment of the Attorney General pursuant to 18 U.S.C. § 4241(d) so that an evaluation as to Defendant's treatability could be done in accordance with the statutory scheme. *Id.* at 34:2-13.

Defendant asked the Court to accept Dr. Barneclo's conclusion that Defendant is not likely restorable to legal competency and argued that, considering Dr. Barneclo's conclusion that Defendant cannot be treated, a commitment to the Attorney General for further evaluation would result in a challenge to the Court's order on due process and equal protection grounds. *Id.* at 40:19-41:1, 42:10-13.

Based on Dr. Barneclo's Report and testimony, and considering the agreement of the Parties to stipulate to Dr. Barneclo's conclusions on questions 1 and 2, and the lack of opposing evidence brought, the Court finds by a preponderance of the evidence that Defendant (1) does not have a rational as well as factual understanding of the charges against him, and (2) does not have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding. The Court agrees with the Government that on such a finding, application of 18 U.S.C. § 4241 mandates the commitment of Defendant to the custody of the Attorney General. As such, the Court therefore commits Defendant to the custody of the Attorney General pursuant to 18 U.S.C. § 4241(d)(1).

## LEGAL BACKGROUND

After the commencement of a prosecution and before the sentencing of a defendant, when the issue of competency is raised

> [t]he court . . . shall order . . . a hearing . . . if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

18 U.S.C. § 4241(a). Prior to the hearing, "the court may order that a psychiatric or psychological examination of the defendant be conducted" pursuant to 18 U.S.C. § 4247(b). 18 U.S.C. § 4241(b). Similarly, the court may order the evaluator to file a report with the court, pursuant to 18 U.S.C. § 4247(c), before the hearing is held. *See* 18 U.S.C. § 4241(b). "The hearing shall be conducted pursuant to the provisions of section 4247(d)." *Id.* § 4241(c).

If the court finds by a preponderance of the evidence that the defendant is incompetent to stand trial—i.e., "he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense"—then "the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility[.]" *Id.* § 4241(d). Under Section 4241(d), a defendant committed to the custody of the Attorney General for treatment "shall" be hospitalized in a suitable facility

> (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and
>
> (2) for an additional reasonable period of time until—
>
>     (A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or
>
>     (B) the pending charges against him are disposed of according to law;
>
> whichever is earlier.

> If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248.

*Id.*

Upon a finding by a preponderance of the evidence that a defendant is not presently competent to stand trial, the court's decision to commit the defendant to the custody of the Attorney General pursuant to Section 4241(d) is not discretionary. *See, e.g.*, *United States v. Ferro*, 321 F.3d 756, 761 (8th Cir. 2003) (noting that although "[i]t is clear that the statutory scheme detailed by Congress in § 4241(d) provides the district court with the discretion to initially determine whether the defendant is competent to stand trial[] . . . after determining that a defendant is incompetent . . . a district court is required to commit the defendant to the custody of the Attorney General for a reasonable period of time to evaluate whether treatment would allow the trial to proceed"); *United States v. Anderson*, 679 F. App'x 711, 712-13 (10th Cir. 2017) (unpublished) (affirming the district court's conclusion that its decision to commit defendant was not discretionary under the plain language of § 4241(d)); *United States v. Magassouba*, 544 F.3d 387, 404 (2d Cir. 2008) ("In short, in contrast to the discretion afforded district courts in deciding whether to commit a defendant for a preliminary competency examination, . . . once a defendant is found incompetent, commitment pursuant to § 4241(d) is mandatory" (citations omitted)).

## ANALYSIS

### I.    Findings and Order of Commitment

The Court finds by a preponderance of the evidence that Defendant is not presently competent to stand trial. As to the first competency question, Dr. Barneclo provided the following clinical opinion in his Report:

> Mr. Torres did not demonstrate an adequate factual understanding of the courtroom proceedings, likely due to an intellectual impairment. He struggled in communicating information beyond a concrete basic understanding, and he showed

deficits in knowledge of the roles of some of the courtroom participants, some of his rights and duties, and of other legal proceedings, such as testifying and accepting a plea bargain. Mr. Torres struggled both with communication and with knowledge of basic aspects of the court, and he showed an inability to learn and retain the information, despite numerous attempts. While he was mostly rational throughout his discussion of his legal case, he did allude to being able to communicate with his mind. It was unclear if this was part of delusional content, or if this was due to his poor communication abilities; the latter is the most likely explanation, as there was no other overt evidence or collateral exhibiting severe mental illness or psychosis.

*Id.* at 3-4.

As to the second question, Dr. Barneclo reported:

Due to Mr. Torres' challenges with communication, intellectual deficits, and poor overall knowledge and understanding of his charges and the legal proceedings, it is likely that he does not have sufficient ability to consult with his attorney in an effective manner at present. He displayed consistent challenges with comprehending questions and information supplied to him, showing evidence of receptive language deficits. Mr. Torres also demonstrated difficulties explaining his thoughts, making communication, beyond basic concrete information, challenging. The evaluator took extra time to break down information into smaller chunks and asked questions in a redundant manner to ensure understanding. Even so, Mr. Torres often displayed difficulties with comprehension. He was unable to provide a valid response profile for a personality test, written at an eighth grade level, with the evaluator reading the items to him. By extrapolation, Mr. Torres would likely struggle comprehending legal aspects of his case in court, and furthermore would likely have difficulties communicating effectively with his attorney in court.

*Id.* at 4. As noted, the Parties stipulated to Dr. Barneclo's conclusions on the first and second questions. Clerk's Mins. at 1; Tr. at 4:23-5:6. Based on the foregoing conclusions, the evidence presented at the hearing, and in consideration of the Parties' agreement on Dr. Barneclo's qualifications to test for competency and his ultimate conclusions on Defendant's competence—as well as the absence of evidence offered in opposition to those conclusions—the Court finds Defendant is not presently competent to stand trial.

Because the Court finds Defendant not presently competent to stand trial, the Court must order him to the commitment of the Attorney General for placement in a suitable facility in

accordance with Section 4241(d).[2] *See Ferro*, 321 F.3d at 760-61 (explaining the "three-part scheme for determining mental competency" under § 4241 where a "district court must first determine, by a preponderance of the evidence, whether the defendant suffers from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. If the district court concludes that the defendant lacks sufficient mental competency to proceed to trial, the court shall commit the defendant to the custody of the Attorney General and the Attorney

---

[2]    Even if the third question was before the Court, Dr. Barneclo's conclusion is insufficient and unpersuasive. Dr. Barneclo's conclusion on the likelihood of Defendant being treated to competency states:

> It is unlikely that Mr. Torres would be able to be treated to competency due to his severe language deficits and neurocognitive impairment, which were likely caused by a combination of genetic factors and a traumatic brain injury at a young age, with no other cause existing. Individuals with impaired verbal abilities progress and learn information at a slow pace, and Mr. Torres'[s] deficits in working memory making the learning process more challenging still. In addition, he was partially found not competent due to severe communication challenges, which are not treatable to the extent needed to participate in a courtroom proceeding. Thus, it is my professional opinion that Mr. Torres is not competent and not treatable to competency within a reasonable period of time.

Report at 4.

Dr. Barneclo testified that he reached this conclusion based on "testing that was done for competency in relation to [Defendant's] neurocognitive functioning." Tr. at 9:1-8. Dr. Barneclo also informed the Court that he has not undertaken the task of treating a person to competency and that his understanding of such a clinical endeavor came from reading "reports post-competency" and speaking with psychologists working in that area. *Id.* at 23:10-12, 16-20. In addition, Dr. Barneclo's proficiency of the Spanish language was crucial to his assessment of Defendant whose dominant language is Spanish. *See id.* at 9:21-10:6, 20:19-20; Report at 7 ("During an informal assessment, Spanish was determined to be a stronger and more comfortable language for communication."). The Court appreciates Dr. Barneclo's candor in his unwillingness to claim that he is equally fluent in Spanish as he is in English, Tr. at 19:12-20:3, but is concerned by the fact that a Spanish interpreter was not used to aid in the evaluation, *id.* at 19:12-15, 20:2-25, particularly in light of the fact that a Spanish interpreter has been used at every hearing before the courts of the District of New Mexico in this case, *see, e.g.*, ECF Nos. 7, 11, 18, 22, 38.

Dr. Barneclo additionally recognized that, had it been known to him at the time of his evaluation, information regarding Defendant's history of violence and noncompliance with taking prescribed medications could have changed his opinion of Defendant's treatability. Tr. at 16:25-17:4, 27:12-29:1. Finally, Dr. Barneclo's assessment of Defendant was limited to approximately three hours on Zoom videoconferencing, *id.* at 14:18-20, 15:23, 21:19-21, which, compared to a potentially four-month evaluation of Defendant under a § 4241(d) commitment for the purpose of ascertaining Defendant's amenability to competency treatment, was shallow and insufficient for the Court to find that Defendant is unlikely restorable to competency. *See* Tr. at 21:17-22 (stating one of the limitations of the zoom evaluation included the inability to procure Defendant's written responses to tests).

General shall hospitalize the defendant for treatment for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed. Finally, if it becomes apparent that the defendant will not attain sufficient capacity to proceed to trial, a dangerousness hearing is conducted in accordance with the provisions of 18 U.S.C. § 4246" (citation modified)); *Anderson*, 679 F. App'x at 713 (rejecting appellant's contention that an evidentiary hearing about her amenability to treatment and whether treatment would indicate a substantial probability that she could become competent to stand trial in the foreseeable future because it "turns the statute on its head" and concluding appellate "failed to demonstrate" why Section 4241(d) "violates the Due Process Clause").

## II.     Defendant's Due Process and Equal Protection Arguments

The Court addresses Defendant's arguments at the hearing regarding due process and equal protection. *See* Tr. at 31:16-32:25. Defendant relied on two cases in support of his assertion that a § 4241(d) commitment now would violate Defendant's Constitutional rights because of Dr. Barneclo's opinion that Defendant is unlikely to be treated to competency: *United States v. Boigegrain*, 122 F.3d 1345 (10th Cir. 1997) (en banc) and *Jackson v. Indiana*, 406 U.S. 715 (1972). Tr. at 32:4-7. The Court addresses each case in turn.

The issue considered by the Tenth Circuit in *Boigegrain* was whether the appellate court had jurisdiction over a pro se defendant's appeal of an order committing him to the custody of the Attorney General pursuant to § 4142(d). 122 F.3d at 1346. The court held that a § 4142(d) order committing a defendant to the custody of the Attorney General is appealable under the collateral

order doctrine. *Id.* at 1349.[3] The *Boigegrain* court did not, however, consider any argument bearing on alleged due process or equal protection violations resulting from the 4142(d) commitment. Rather, the court relied on the Second Circuit's conclusion that a § 4142(d) commitment meets the requirements for appellate review under the test set forth in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). *Id.*

In applying the *Cohen* test, the court noted that the loss of liberty due to a § 4241(d) commitment is "analogous to the denial of bail" and cited to an Eighth Circuit opinion that held a § 4241(d)(2) commitment for an additional four months did not violate due process because the total time for commitment to determine competency did not exceed the length of the possible sentence. *Id.* Here, the length of time Defendant will be under the commitment of the Attorney General pursuant to § 4241(d) will not extend past the 10 years of imprisonment he could be sentenced to. *See United States v. Ecker*, 30 F.3d 966, 969 (8th Cir. 1994) (holding there is no due process violation when the length of time in confinement for purposes of determining competency is "far less than the possible sentence"); *United States v. DeBellis*, 649 F.2d 1, 3 (1st Cir. 1981) (concluding the period of commitment for a determination on a defendant's competency to stand trial is reasonable when it "alone has [not] exceeded the maximum possible sentence"); *cf. Miles v. Dorsey*, 61 F.3d 1459, 1472 (10th Cir. 1995) ("The 'conviction of an accused person while he is legally incompetent violates due process.'") (quoting *Pate v. Robinson*, 383 U.S. 375, 378 (1966)). Considering this Court's finding against Dr. Barneclo's opinion as to Defendant's

---

[3]    *But cf. United States v. Perea*, 977 F.3d 1297, 1301-02 (10th Cir. 2020) (concluding an order finding a defendant competent to stand trial is not a final order because it "does not conclusively determine the defendant's competency" and the collateral order doctrine did not apply).

treatability, *Boigegrain* is unlikely to provide a basis for alleged due process or equal protection challenges.[4] The second case Defendant has relied on is no more instructive.

The United States Supreme Court in *Jackson v. Indiana* did consider the due process and equal protection implications in the State of Indiana's pretrial commitment statute for an incompetent accused, holding the scheme resulted in the unconstitutional *indefinite* commitment of a person based solely on findings of incompetence and unlikeliness to obtain competence. 406 U.S. at 717, 720. The *Jackson* Court exhaustively analyzed the State scheme, concluding it did not provide for periodic review of the defendant's condition by mental health professionals or the court after confinement and held the Indiana statute therefore violated due process and equal protection. *Id.* at 720-23, 730-31.

As to Jackson's equal protection argument, the record established that his commitment was not temporary because nothing "points to any possibility that Jackson's present condition can be remedied at any future time[,]" and neither the "statute nor state practice makes the likelihood of defendant's improvement a relevant factor" before commitment, thereby making Jackson's commitment "permanent in practical effect." *Id.* at 725-27. As such, Indiana's "lenient" statutory scheme permitting the pretrial commitment of a defendant on the limited findings that they are incompetent and unlikely to change their condition in order to stand trial, violated the equal protection laws of the Fourteenth Amendment. *Id.* at 729-30 ("Consequently, we hold that by subjecting Jackson to a more lenient commitment standard and to a more stringent standard of release than those generally applicable to all others not charged with offenses, and by thus

---

[4]     A dissent was issued on the basis that a final disposition on the issue of competency must occur, or the matter be stayed, before an appeal can be taken because it "would disrupt proceedings during the [4142(d)] evaluation period by temporarily divesting the trial court of jurisdiction to act further." *Boigegrain*, 122 F.3d at 1349-50 (Lucero, J., dissenting) ("The majority's approach will therefore often result in two appeals, which 'is the kind of disruption of the judicial process that the finality requirement was designed to avoid.' I would dismiss the present appeal on grounds that the order appealed from does not represent a final determination of defendant's competency to stand trial." (citation omitted)).

condemning him in effect to permanent institutionalization without the showing required for commitment or the opportunity for release afforded by [Indiana's "'mentally ill'" or "'feeble-minded'" civil commitment statutes], Indiana deprived petitioner of equal protection of the laws under the Fourteenth Amendment.").

As for Jackson's due process argument, the Court similarly held "that Indiana's indefinite commitment of a criminal defendant solely on account of his incompetency to stand trial does not square with the Fourteenth Amendment's guarantee of due process." *Id.* at 731. The Court compared the State procedures against the Federal scheme under 18 U.S.C. §§ 4244 and 4246. *Id.* at 731. Under the federal scheme, a defendant found to be incompetent can be committed indefinitely only on a finding that they are "dangerous" and such commitment can result in a release of a defendant "when he is no longer 'dangerous.'" *Id.* at 732 (citing 18 U.S.C. §§ 4247, 4248). The Court thus held that a person charged with a criminal offense by a State "who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain the capacity in the foreseeable future." *Id.* at 738. This holding conforms with the federal scheme as it relates to the present procedural posture of Defendant's case.

First, unlike in *Jackson*, the Court has not found in favor of Dr. Barneclo's conclusion that Defendant is unlikely to become competent to stand trial and the record therefore is without a finding on that issue. Second, Defendant does not have a similar equal protection claim because Defendant does not face indefinite commitment. Under the relevant statute, § 4241(d), Defendant has been found incompetent and must be committed to the custody of the Attorney General so that a finding on his amenability to treatment can be made. *See Magassouba*, 544 F.3d at 404; *Ferro*, 321 F.3d at 761; *Anderson*, 679 F. App'x at 712-13. Here, Defendant's commitment is not

indefinite—by the plain language of the statute it cannot exceed four months, § 4241(d)(1) ("unless the court finds that the individual is likely to attain competency within a reasonable time [thereafter]," *United States v. Baker*, 807 F.2d 1315, 1320 (6th Cir. 1986)). Should Defendant be deemed untreatable to competency, only then can the procedures for § 4246 be invoked, *see* § 4241(d), and an assessment made on whether Defendant is "suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another[,]" *see* § 4246(d). Third, Defendant does not have a due process claim because he will be committed to the Attorney General for a "reasonable period of time to examine whether there is a substantial probability that he . . . will attain capacity" and his commitment is mandatory under the "unambiguous" § 4241(d). *See Anderson*, 679 F. App'x at 712-13 (internal quotation marks and citations omitted).

The Court is unpersuaded by Defendant's due process and equal protection arguments. *See Ferro*, 321 F.3d at 759, 61-62 (rejecting appellant's argument that his involuntary hospitalization pursuant to § 4241(d) was improper because there was no evidence to support the contrary conclusion by the initial reviewing doctors that he was untreatable and denying an absurd result would occur if further investigation into appellant's condition occurred following MRI results that "demonstrated extensive hemispheric white matter abnormalities and cerebellar infarcts" because "the statutory scheme appropriately affords additional time during which the Attorney General may explore medical options").

## CONCLUSION

**IT IS ORDERED** that (i) Defendant Leonel Torres is committed to the custody of the Attorney General for psychological evaluation and treatment for a reasonable period of time, not to exceed four months, pursuant to 18 U.S.C. § 4241(d)(1); (ii) the evaluating psychologist(s) shall

report on Defendant's status sixty, ninety, and one-hundred-twenty-days after he is taken into custody; and (iii) the(se) psychologist(s)' report(s) shall address the following questions: (a) does Defendant now have a rational as well as a factual understanding of the charges against him? (b) does Defendant now have sufficient present ability to consult with his lawyer with a reasonable degree of rational understating? (c) if Defendant does not presently have a rational or factual understanding of the charges or presently does not have sufficient ability to consult with his lawyer with a reasonable degree of understanding, is there a substantial probability that in the foreseeable future Defendant will attain the capacity to permit the proceedings to go forward?

**IT IS FURTHER ORDERED** that pursuant to 18 U.S.C. § 3161(h)(1)(A), the period of time from the filing of the Defendant's Motion to Determine Mental Competency, ECF No. 31, to the entry of an order finding Defendant competent is excluded for purposes of calculating Defendant's speedy trial rights. Defendant is not to be questioned regarding his pending charges and, pursuant to Rule 12.2 of the Federal Rules of Criminal Procedure, neither any statement made by Defendant in the course of the examination, nor the fruits of any statement made by Defendant in any criminal proceeding, except on an issue respecting mental condition on which Defendant has introduced testimony, may be admitted into evidence.

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE